Thank you, counsel, for waiting. We have our third case of this morning, the third of four. Merritts v. Richards et al., number 19-1335, Ms. Lane-Steele and Mr. Anderson. And Ms. Lane-Steele, as I understand it, previously the amicus counsel was, I guess, a John Jacobus or Jacobus of your firm. Is that correct? Ms. Lane-Steele Yes, Your Honor. Both Mr. Jacobus and I were appointed amicus counsel in this matter by the court back in April. Merritts v. Richards And I understand he passed away, so you have our condolences. Ms. Lane-Steele Thank you. Merritts v. Richards And thank you for being with us today. So why don't you begin whenever you're ready. Ms. Lane-Steele Sure. Good morning, Your Honors, and may it please the court. Laura Lane-Steele, as court appointed amicus counsel in support of the appellant Stuart Merritts. Mr. Merritts wants a federal court to adjudicate his Fifth Amendment just compensation claim, a claim that was not litigated in state court, and a claim that requires the straightforward application of federal law. So the question is whether abstention, immunity, or conclusion doctrines prevent federal adjudication in this case. You might want to begin with the Rooker-Feldman just jurisdictional issue, so we can bat that one out of the air if we could. Ms. Lane-Steele Absolutely. So it's our position that the just compensation claim isn't barred by Rooker-Feldman or claim preclusion because it wasn't litigated in the state court. Pennsylvania has two sort of — oh, I'm seeing from Mr. Kane now, I forgot to reserve time for rebuttal. My apologies to the court. With the court's permission, can I reserve two minutes for rebuttal? Mr. Merritts Absolutely. And you'll probably get much more than that anyway. Ms. Lane-Steele Okay. So back to Rooker-Feldman. Just compensation claim wasn't litigated in state court, so there's no state court judgment on that issue. As for the other issues in Mr. Merritts' complaint, it's our position that because the harms that he's alleging come from the defendant's actions and not from the state court judgment itself. And that's because the state court judgments themselves did not effectuate the taking. Under Pennsylvania law, a taking is effectuated upon the filing of the declaration of the taking, and the title actually passes to the condemnor upon that filing. And so that is what effectuated the taking, not the state court judgment itself. So that's our position on why Rooker-Feldman does not apply here to any of these cases. Mr. Merritts Just to tease that out, though, even if that's what effectuated the taking, doesn't the state court have a role in validating that taking? And isn't there some notion that we'd be asked to review that under those claims, or maybe it's just one claim? Ms. O'Brien Yes. So the state court is adjudicating preliminary objections to the declaration of taking, but it's not sort of the legal mechanism that transfers title to the condemnor. So to the extent that there are issues that were litigated in the state court, that the state court decided the proper mechanism for addressing those would be claim preclusion and not Rooker-Feldman. Because Rooker-Feldman under Exxon only goes to the state court judgment itself, and if the injury flows from the state court judgment. And so that's what happened in Campbell, the case that the court referenced in his order. In that case, it was the court ordered forfeiture itself that the appellant argued constituted the taking. Here, Mr. Merritt is not alleging that the court order itself constituted the taking, he's alleging that the declaration of taking constituted the taking. So that's sort of the clarify one thing. There are two basic kinds of claims he had here. A just compensation claim, he didn't get enough money for what they were taking from him. And then a due process claim challenging the power of the Pennsylvania officials, the authority to condemn his property. Your briefing, I think we only asked you to deal with that first issue, is that correct? The just compensation? Ms. O'Brien Yes, Your Honor, that's what our briefing primarily dealt with, both the Burford brief and the supplemental brief. But without getting into the merits, does he still have a viable due process claim here? Does Your Honor mean with regards to the state's sort of power to take his property? Right. Right. So, you know, as amicus counsel, we don't represent Mr. Merritt's. And so, Mr. I just want to be clear that Mr. Merritt's might have a different position on this question. But as amicus counsel, it's our position that to the extent those claims were litigated in the state court proceedings, that claim preclusion would apply to the extent that his claims in this case depend on sort of those those arguments that he already made in the state court about the state having the power due to his sort of unique history of his title to take his land under its eminent domain power. Counsel, I understand the distinction you're making about the declaration of taking and that being the infliction of injury. But in the Commonwealth's process, it seems that it's the writ of possession that's issued by the state court that finalizes that transfer and and upholds it under law. Why, under those circumstances, shouldn't we treat that court order as what what really affects the injury here, which would then bring outside of the just compensation point? And I understand the distinction you're drawing there. But wouldn't that bring us back to the vast majority of cases where the federal courts do invoke Rooker-Feldman in dealing with the issues of title and possession in an eminent domain claim? Right. So to the extent that this court views Mr. Merritt's allegations as stemming from that writ as opposed to the declaration, then Rooker-Feldman may apply. But that's not how Amicus views his allegations. Under Pennsylvania law, the only reason the state court issued a writ of possession was because Mr. Merritt's was challenging the taking with the preliminary injections. And so the state asked for a writ of possession in order to possess the land. But that's not if if the condemnee doesn't have any objections to the taking and sort of agrees with what they're doing and doesn't bring sort of these preliminary injections, then the court may not issue a writ of possession. The court may not get involved at all. So the writ of possession is sort of an action taken by the court that says, yes, you may take possession of this land, but the title had already been transferred. The taking had already been effectuated. So that and that's what we view Mr. Merritt's injuries stemming from. But again, to the extent that those are barred by claim preclusion, it's not just positive on the Rooker-Feldman question. To the extent that the issue of the relief of returning the property rather than paying just compensation is is then on the table. Wouldn't we be in effect overruling the state court's writ of possession if we were to conclude on the issues of title and possession that the taking here was unconstitutional and warranted further relief? Yes, that may be the case. This court was going to address his sort of equitable relief and sort of say that the taking was unconstitutional. Then would Rooker-Feldman bar that? Again, I'm not sure to the extent that it's challenging the possession versus the declaration. To me, the sort of power of the state comes from the declaration of the taking, and that's what effectuates the taking. So your point would really be he's not one of the elements of Rooker-Feldman is to be a state court loser. And I guess what you would say is he lost before he went to state court because the taking was effectuated before he even got to court. I mean, the problem with that is, well, then he did go to court. They did challenge it, and the court didn't agree with them. And so it begins to feel like, well, where do we start? Where do we say where the injury started or what kind of made that injury finally possible? And it does seem a little weird if we go with initial actor as opposed to ultimate actor, because usually most reasons to bring a person to state court don't start with what the court themselves did. And so it does seem like a strange place to start to say it was the original actor, but now that it's in state court, let's go back to the original actor. Right. Well, so I think that perhaps if we look at this in a different context, so let's say a state actor did something that the claimant alleged was unconstitutional, like let's say a Fourth Amendment search and seizure claim. Then the court adjudicated it or the state court adjudicated it and said, no, there's no viable claim here and dismissed it. Then the claimant brought it to federal court. Claim preclusion would apply in that instance, not Rook or Feldman, because the action complained of by the state actor would be the harm. Just like in this case, the action by the state actor, the taking was done by the state actor and then just approved by the court. And so that's what I think the Supreme Court was doing in Exxon is sort of teasing out when to truly the instances where the where the judgment itself is what's causing the claimant's harm, not the actions. So if it's if it's claim preclusion, that's really in play for a chunk of this in your mind. Do you take a position on whether or not the whether or not claim preclusion has been validly presented at the stage of the proceedings? Does your I mean, it's not jurisdictional. It's typically regarded as an affirmative defense. It has to be raised. And so it's one thing to say, gee, that's that's a claim preclusion issue. It's another thing to say that's a claim preclusion issue. And it's before everyone right now today because it's been presented. So of those two options, and I think that's a third place, we say so. But of those two options, which one do you think it is? And the state can correct me if I'm if I'm wrong, but I believe that the state in the different iterations of this case, perhaps at the district court level, they did brief preclusion. Okay. Okay. Isn't isn't the stronger argument more for issue preclusion than claim preclusion? Um, perhaps, Your Honor, perhaps. All right. Well, let's let's go back to the two of the two of the big issues that the district court error in holding that ex parte young doctrine bars merits claims against Pennsylvania officers and their official capacities. What's your argument on that? Our ex parte young in the applies only to prospective relief. So to the extent that this court used Mr. merits as alleging prospective relief and ex parte young would apply, but it's, it's our, but it's our argument. Again, we're focusing on the on the compensation here that sovereign immunity does not apply to the, uh, to the compensation claims. And because that's a monetary damages issue, ex parte young would not apply images. If my colleagues have any further questions, don't have any further questions on that. And I'll wait for them. Uh, I'll go to the abstention issue, but, uh, any questions on young? Well, what, what about to, to the return of property or any other future action that you'd um, be requesting is really. To the, um, so I could join a rephrase. I'm not sure I understand quite what the question is. So, um, you made your point as to the request for damages, but what about the request for the future return of property? And whether ex parte young would apply. Um, yeah, so I suppose if, uh, if he's seeking prospective relief for constitutional violations, then our, then ex parte young would apply. And he, and he could have a viable claim against, against state officials in their official capacity. Is, is, is, is he permitted to bring, uh, an official, uh, a claim against state officials in their official capacity in federal court under kind of, you know, state sovereign immunity, 11th amendment, whatever, whatever kind of bundle you want to call this, this, this area of jurisprudence is, is that permitted? Uh, I believe so, your honor. Um, however, what, what Nick makes, makes clear is that the sort of the primary remedy for a taking is, is compensation. So to the extent that, um, you know, he's alleging injunctive or prospective relief, that's, you know, sort of the exception to the rule where the remedy is, is compensation as opposed to equitable relief. Indeed equitable remedies are typically unavailable in a takings case under Nick, right? Yes. Typically. I don't, I'm not sure I want to make an absolute statement, but yes. So if he's only seeking, so if he's only seeking damages, so, so, so let's just, let's just, you know, there's interesting issues all around the periphery, but let's just say he's only seeking damages. Would he be able to bring a claim only for just compensation damages in federal court against state officials in their state official capacity? Our position is yes. And why? Because I, I'm not sure I follow that. So I'm really interested in your explanation. Yes. It's, it's, it's complicated. So our position is that sovereign immunity does not apply to, um, fifth amendment claims, uh, brought in federal court. Um, and that means that he can bring claims against the state as well as, um, state officials in their official capacity. That may be where the Supreme court goes in the next five years, but I don't see a case that ever says that. I mean, Nick, Nick might be a preview of coming attractions in that respect, but is there any case that says that just for takings claims? I understand that takings have their own component to them that says this is a little more self executing than other types of constitutional rights, but that doesn't mean that even if it forum is still federal court for that self executing right. And so it seems to me that takings in the 11th amendment can be reconciled by saying, yes, you have the self-executing claim. It's good anywhere. Oh, by the way, except in federal courts, when you're suing a state official in their official capacity. And is there, is there any case that says it, anything that that's how takings would operate as an exception to that state sovereign immunity, whether it arises from the 11th amendment or some other source. So your honor, to my understanding, the Supreme court hasn't addressed this issue either way. So there's no binding precedent on this court, um, either way. And I think that the structure of the constitution itself, um, provides an avenue or M implies that, uh, say sovereign immunity does not apply to, uh, fifth amendment takings claims. And then Nick just merely reaffirms that interpretation of the constitution. And I can go through that. Yeah. Yeah. At least that's really interesting for me because right now I see whatever structural arguments you want to raise is encountering an 11th amendment problem, at least for one specific forum federal court. So, so, so it's a great argument everywhere else, except there's one forum restriction that came later. That's the 11th amendment, right? So as to the structure of the constitution, um, as your honor mentioned, the fifth amendment mandates a sex, a self executing damages remedy. And then through the 14th amendment, this applies to the states and the Supreme court has held that, um, the 14th amendment pierces sovereign immunity in order to enforce the guarantees of the 14th amendment. That's what the Supreme court held in Fitzpatrick versus Bitzer. So under that reasoning, when the state court or not the state court, when the state fails to provide just compensation, they're violating the 14th amendment and sovereign doesn't apply. Um, so the way that Nick sort of reaffirms that, and, and this goes to your point, I think about the federal forum. So Nick reaffirms this reasoning because Nick stands for the proposition that litigants can come directly to federal court for takings claims, not withstanding any state court remedies or procedures. And, and prior to Nick, that's kind of what the federal courts were doing. They were kicking takings claims back down to federal court. I mean, excuse me, back to state court and saying, um, that the 11th amendment, um, barred takings claims in federal court, but as long as the state court would hear that claim. Um, but what Nick does is it says the right to bring, um, a takings claim in federal court is not dependent on, on state court procedures, state court, anything, uh, or remedies. So, so, so, but, but, but, but the problem here seems to be that there's, there's this, there's this almost changing of, uh, changing of positions when it comes time to defeat 11th amendment concerns. This is no longer a taking case, but it's reprised as a due process 14th amendment violation. And then when it comes time to say, okay, you know, what can we do in state courts? What can we do in federal courts? And what are their bars? Then we look at Nick and we say, oh no, no, no, it's actually still a takings claim. And so it seems that there's almost this like this shifting of kind of what is the real claim. And it strikes me that to do all of these federalism sort of analyses, we've got to pick one in run from A to Z with it either being a takings claim throughout or due process claims throughout, because when it kind of metamorphosis from one to the other, it's easy to jump kind of, you know, logs from one to the other, almost like a video game. But the real answer is we got to pick one and stick with it. Well, your honor, I'm not sure if that's, if that's completely necessary because the Supreme Court has held that the fifth amendment is incorporated into the 14th amendment due process clause. So sort of that's, that's why we're not really jumping back and forth between the two. We're really talking about them on the fifth amendment as applied to the states under the 14th amendment. So I'm not, I'm not sure that we're jumping back and forth. Three courts of appeals so far have disagreed with you on your reading of Nick. You're, you're asking us to, to break from them and, and create a circuit split on this issue. Yes, your honor is correct that if your honor agrees with me, then you would be creating a circuit split on this issue. But the courts of appeals who have analyzed this issue say that Nick didn't address sovereign immunity, so it didn't change the analysis. But I think digging a little bit deeper, looking at both Nick's mandate that essentially plaintiffs can get their remedy in federal court as opposed to state court. And then looking at the structure of the constitution, no court has dug deep and evaluated whether the, whether the pre-Nick's amendment bars you here in federal court. No, no court has really looked at that and said, well, this, is this still right with Nick's mandate that federal courts are open, are just as open to these claims as state courts. Also in light of the structure of the constitution where states kind of gave up some of their sovereign immunity to the extent necessary to enforce the 14th amendment. Wouldn't we need a clear mandate from the Supreme Court before we we went contrary to our own precedent and the consensus of all of the courts? And where do we have that clear indication in Nick that that's what the court intended? I'm not sure that this court would be violating sort of any binding precedent by, by agreeing with my analysis of Nick. It's true, it's, it's not an analysis that's been adopted. Um, but some district courts who are, who are bound by binding, uh, court of appeals precedent have indicated a troublesome sort of reasoning, um, post Nick, uh, that the 11th amendment bars takings claims and federal court, um, but not state court considering Nick's. Look, it's weird. It's, it's really, really weird. I'm not sure, especially because it wouldn't bar it against state municipal, against municipal officials, but only state level officials. So, so kind of federal court is open for takings claims against municipal officials and federal officials, but not state level officials. The rub is this as weird as that is maybe the 11th and maybe that's always what it's done. And Nick kind of suggests, yeah, we've got, we we've got to eliminate barriers to takings claims, but I don't know that Nick goes so far as to say, and we're going to take down the 11th amendment as it applies to takings claims. Um, because again, when the states ratified the 14th amendment, they consented essentially to suit, um, four cases, uh, brought in order to enforce the guarantees of the 14th amendment. And because the guarantees of the fifth amendment incorporated are incorporated to the 14th amendment, that's why 11th amendment sovereignty does not, um, apply to these claims. So I don't think that Nick has to do all of that work change in the law, right? Is that your honor? That would be a sea change in the law, right? Well, I mean, the federal courts have already sort of held that, um, condom needs have a mandatory remedy under the constitution. They're just saying, go to state court to get it. Right. Um, but Nick says you don't have to go to state court anymore to get your remedy, come to federal court. You don't have to exhaust in state court, right? That, that was Nick's specific holding. And, and so exhaustion is, is different than saying you, cause exhaustion assumes that eventually someday there'll be a federal court that will hear your case. But, and so Nick was decided in the context of exhaustion with the eventuality of a federal court and, and possibly with the 11th amendment does, and maybe, maybe it doesn't apply as you say, because you've got a 14th amendment, we've got all these other things, but at least the 11th amendment never has the eventuality of a federal form. Yes, absolutely. Nick's holding was about exhaustion. Um, but the broader point that Nick stands for is that requiring a plaintiff to go to state court first to get their remedy, um, is, is not in line with the constitutional guarantees under, under the fifth amendment. So while it doesn't address sovereign immunity, um, that, that sort of larger point that Nick makes that, um, and Nick says a federal forum rings hollow for taking plaintiffs who are forced to litigate their claims in state court, um, that reasoning, uh, and that sort of the broader point of Nick, um, does sort of, uh, repudiate the reasoning of previous federal courts, pre-Nick's federal courts that told plaintiffs to get their remedy in state court. I mean, I mean, the problem with Nick was it was against township of Scott, not state of Pennsylvania. And so as a township issue, it really had no reason to ever touch on 11th amendment concerns. Yes, yes, that's right. Your honor. Um, we're not arguing that Nick explicitly addresses sovereign immunity, but we're saying that Nick read in light of the past precedent that does address sovereign immunity undercuts that prior precedents rationale about requiring takings plaintiffs, um, to go to state court first. And if the state court says we're invoking sovereign immunity, okay, then you can come to federal court. And now isn't Nick entirely consistent with, uh, um, appearing in federal court with a remedy that's limited to, uh, seeking, uh, just compensation, uh, as against the, uh, individuals and their individual capacity. Um, so are you saying, right. Okay. So not in their official capacity, but their individual capacity such that sovereign immunity wouldn't apply. Correct. So my understanding of the case law on that is, um, that you can't actually bring, uh, taking suits against individuals in their personal capacity because individuals in their personal capacity, don't have the power to take land under eminent domain. Only, only the state does or state officials in their official capacity. Um, so because an individual in their individual capacity doesn't have this, the sovereign powers necessary to con to, uh, do a taking, then you can't hold them liable in their personal capacity. Is it your position that if, um, if we don't read Nick the way you would like us to, um, in terms of 11th, uh, amendment immunity, that, uh, that's, that's the end of this case that there's no ability to proceed under 1983 against these defendants in their individual capacities. That, that issue hasn't been, been briefed yet, but my, um, understanding of the case law is that, um, again, because individuals in their personal capacity don't have the power to take land that those claims are sort of non-justiciable. Um, and, and then of course, qualified immunity would apply. So the, uh, so Mr. Merritt, so even if sovereign immunity or that claim was just as full, then Mr. Merritt's would have to show that qualified immunity doesn't apply. So, so does, so does that apply just to takings or does that apply to just compensation claims too? Um, except there's a different, you know, except that there's, there's, there's a, you know, two parts of that. One is just, I took the property. The second is I owe you something just in return for the property is, is your point that you're saying there's no takings claims for just taking, you know, writ of possession, sort of taking, uh, the property, but there still may be individual capacity, just compensation claims, or are both those off the table from your understanding of the case law? My understanding of the case law doesn't part, they don't parse those two things out in the way that we're doing here. Um, so I don't, I'm not sure I can give you a definitive answer on that, but, but if they did allow section 1983 claims against individuals in their individual capacity, um, again, you'd have to go get over the qualified immunity hump and you would also sort of have these odd practical ramifications where individual people could be liable for millions of dollars damages. Um, if the taking is, you know, sufficiently large. Any further questions on Nick, if not, uh, I would ask you to address Burford abstention, but any, any further questions on Nick colleagues? Yeah. Okay. If you, if you, uh, did the district court err in holding that merits claims against the Pennsylvania officers in their um, so our view is that Burford abstention doesn't apply, um, for, for two reasons. Uh, first under Quackenbush, um, the district court aired when it dismissed Mr. Merit's claims, um, under Burford abstention, because Mr. Merit's is seeking money damages. And what Quackenbush says is that district court's power to dismiss, um, derives from their equitable powers, um, to dismiss under abstention principles derives from their equitable powers. And here the court was sitting in law. And so under Quackenbush, the district court was not permitted to dismiss under Burford. Um, the court can decide it on that issue. The court could also apply, uh, the Burford test and, um, determine that the district court abuses discretion because again, and as amicus, we're focusing on the just compensation claim. All that's required here is for the federal court to adjudicate his claim. And it's a straightforward fact question. What is the fair market value of Mr. Merit's land? And that's the straightforward application of federal law. So unlike there's no significant state interest that really needs to have the federal court stay out of it. No, your honor. When, when looking at the just compensation claim, you're just having a federal court adjudicate the fair market value rather than having a state court adjudicate the fair market value. Yeah. But there's nothing so significant on, on the state level, similar to what happened in Texas and Burford that federal courts should abstain from exercising jurisdiction. No. And again, that's because as amicus we're focusing on not the, not the state's power to take the land under eminent domain, but rather the, the just compensation, whether Mr. Merit's was offered just compensation. No, I get it. I was, I thought I was saying something that would support your view that Burford abstention does not apply. There's not bar. Yes, your honor. That's, that's correct. How do you address our, or are we haven't not presidential opinion in coals? Is that in any way relevant to this, this issue? So we don't think coals applies and although it doesn't go into it, it's rationale. The briefing relies upon this case, fair assessment that survives quack and Bush, but that basically holds that when a plaintiff is seeking both declaratory and monetary relief, if the monetary relief depends on a determination in the court's equitable power. So if the, so if the equitable determination comes first and then the monetary damages is sort of a product of then you can abstain because that is a primary primarily equitable claim or an equitable dependent claim here. Here, Mr. Merit's is a monetary damages claim. Doesn't depend on any sort of equitable relief that the court has to grant first. So that's why we don't think the rationale underlying coals applies here because he's seeking monetary damages. That's not dependent on a declaration or an injunction, which is what fair assessment held. Any further questions from colleagues on this, on this issue? Just that you, you, you'd agree that that's, that's not the case. If also before us, as one might reasonably understand from Mr. Merit's brief is a question of whether the eminent domain code violates the constitution, both state and federal. Right. Well, if arguably, do you mean the fair assessment claim or just the Burford argument in general? Well, if, if what we're looking at is whether we have an unsettled question of state law and we are there, there is a challenge that is being raised. If, if, if we read the briefing here to raise a challenge to the eminent domain code itself, then don't we have there an unsettled question of state law? And, and one that considering the third factor of Burford as well, might threaten to disrupt the coherence of, of the state scheme. If, if Mr. Merit's was alleging that the eminent domain code violated the federal constitution, then you don't have a state law issue there. You have a federal issue. And would that disrupt the eminent domain code? Absolutely. But then that would require sort of a balancing test between whether the, the federal court can adjudicate a federal constitutional rights or whether sort of comedy principles would outweigh that. Our position is that you don't have to reach that question here. But certainly Burford abstention is much, much less likely to apply when a federal constitutional claim is, is brought because it doesn't necessarily depend on the adjudication of state law and the federal interests are high. Okay. Why don't we get you back on rebuttal? If we have any further questions, cause we've already taken up about 30 minutes, so, but you'll still get your rebuttal time. Thank you, Your Honor. Thank you, Mr. Anderson. Good, good afternoon, Your Honor. May it please the court. My name is Caleb Anderson from the Pennsylvania office of attorney general. I represent the Apple ease in this matter. I'll start with, with Rooker Feldman since that's what gets addressed first. Yeah, you, you took the, you took, you started exactly where I was going to ask. You argue that Rooker Feldman bars the claims how so? Yes, Your Honor. Well, in this case the, the question is whether or not the injury was caused by, or the point that's most in dispute is whether the state court judgment is what caused the injury or if it was the initial taking. And as we set forth in our brief, the injury is caused by the Blair County court of common pleas granting the writ of possession and allowing the land to be seized by, to be taken by PennDOT. It's not the initial claim. They're arguing over the competence, the adequacy of the compensation, right? Well, and Your Honor, and this sort of spills over into the Burford issue, but this appellant and amicus sort of suggest that this is solely an issue about compensation. They're not trying to get into the taking, but this is, the court first has to consider the taking issue in the first instance. That's a predicate question that the court has to address first. They, it's, it's improper to just simply look in isolation at the, the issue of compensation because the court is required to first look at whether or not the taking was appropriate. And indeed when Mr. Maritz initially filed in, in state court, and then later brought this case before the purported jurisdiction of this court, he was challenging the fact that he claimed that the land was not subject to eminent domain under state law at all. That's a second, but he has a just compensation claim that he brought in federal court. Is that correct? Yes, Your Honor. And, and he could not in state court have challenged the adequacy of his compensation. That is, he could not have challenged that he didn't get just compensation in the state condemnation proceeding. Pennsylvania statute expressly bars it, right? It is two separate proceedings, Your Honor, but again, because part of the issue of whether or not that the compensation is appropriate would be dependent on whether or not. But, but, but Rooker-Felman doesn't focus on kind of commonality of issues. Rooker-Felman is kind of, is, is, is, is in some ways a derivative of the federal statute. I think it's 28 U.S.C. 1257 that talks about the only place that you can appeal final state court judgments is to highest, highest state court judgments to the Supreme Court. And so we're not looking at issues are involved in those, in those appeals. We're just looking at whether there was a final judgment. It's, it's one thing to say there was a final judgment effectuating the taking. And it's another thing to say whether there was or was not a final judgment as to the amount of just compensation. And I think what judge Ambrose point was going to was where is the final judgment that would be precluded by Rooker-Felman as to just compensation at the And I realized that this, that the idea of something being, you know, intertwined was sort of pre-Exxon, which, you know, is not, is not in vogue like it used to be. Correct. You're right. However the, the concept of, and I believe this court addressed sort of the landscape post-Exxon in the Great W Mining and Mineral Company case. And that was back in 2010, I believe. In that case, this circuit looked to an example, a case from the second circuit, Hoblock versus Albany County Board of Elections. And in that case, the example that was given was termination of parental rights, ordering the state to take custody of a child, and then said that Rooker-Felman would bar the father from then going to federal court seeking, among other things, the return of his child. And similarly here, this wasn't just solely a case about the, about the compensation for the land that was seized by the Commonwealth of Pennsylvania. Mr. Meritz has been, has consistently made clear throughout this litigation that he was seeking the return of his land, the end of the continued, continued seizure of his land, which he believed to be improper. So although he may not have explicitly said, oh, I'm solely, you know, one of the things I'm looking at is, you know, this injunctive relief that would undo the state court judgment. He has been asking for that, and that was made clear in his complaint. So to the extent that he's challenging the state court judgment to undo it, perhaps Rooker-Felman applies. But to the extent that he says, hey, I'm fine with the state court judgment. I've got claims in the alternative. I'm perfectly at peace with that state court judgment that took my land. I just want to get paid for my land. Well, it certainly doesn't feel then that he's asking a federal district court to review and overturn the state court judgment. Much to the contrary, the state court judgment provides the anchor, the entire basis for his just compensation claim. Because the state court judgment took his land, now he wants just compensation. And so your point on Rooker-Felman might be true to the extent you're trying to say that it bars a takings claim. It is equally untrue, it strikes me, that it bars, that it doesn't bar, I guess, a just compensation claim. Well, and Your Honor, perhaps there'd be an opportunity then to pivot that even if, to the extent that Rooker-Felman would only bar certain of his claims or certain of his relief, well, then he still has to get over the issues of raised judicata and the Burford abstention, which to the extent that Rooker-Felman doesn't completely dispose of his case, then he still has those additional roadblocks as well as state sovereign immunity. Mr. Anderson, we're all in agreement that there's no state court judgment as to the monetary compensation, right? They didn't reach that stage of things in state courts. That's correct, Your Honor. Can you address, just before we turn to those other issues that you've mentioned on Rooker-Felman, can you please address the, if we think of it in these terms, the final judgment as to the taking itself and Ms. Lane-Steele's point that Pennsylvania's scheme is somewhat unusual and it's really the declaration of taking. Upon the declaration of taking, there's transfer of title and legal possession taken by, at that point, by the commonwealth. I'm sorry, Your Honor. I didn't mean to interrupt. Respectfully, I have to disagree with Amicus on as far as when the judgment becomes final, and I believe in the first iteration of this case that was brought before the district court, and that was 351 F SUP 3rd 943. I believe the district court explained that it's not, under Pennsylvania law, it's not the mere filing of the writ of possession. It's the decision on the writ of possession that constitutes the final judgment. So it's not merely the fact that PennDOT filed the declaration of taking in the Blair County, Pennsylvania Court of Common Pleas, that constituted the final judgment. It was not until after they filed that Mr. Maritz raised his preliminary objections as to the taking of the land and then the Blair County court issued its decision. That would be the final judgment then that would serve as the bar. But we're looking at the nature of that judgment, right? We want to know if it's simply a ratification of a prior injury or it is itself what produces the injury. And given Pennsylvania's scheme, why doesn't the filing of the declaration of taking under section 307, as I understand it, is what effectuates the transfer of title and possession? Well, your honor, it's my understanding that the filing of the declaration, like that's why Mr. Maritz had the ability to file his preliminary objections. The Blair County Court of Common Pleas could have ruled no, that it wasn't proper to take his land or it was an excessive amount of land that was taken in relation to the project. So I don't believe, based on my understanding of how the eminent domain procedure would operate in that situation, that I don't believe that the mere filing of the declaration is the injury. It's not until the court has, it's not until the Court of Common Pleas has decided on the objections to the taking that it becomes a final judgment. But to Judge Krause's point, this notion of cause the injury in the Rooker-Feldman context isn't our standard notion of cause. And we have this kind of simply ratifying, acquiescing in, or left unpunished, then that's just not, that's not causing the injury for purposes of Rooker-Feldman. And so if it's the transfer of title upon the declaration of taking, it's the injury, and that's just left unpunished or ratified or acquiesced to, then that's not causing injury under Rooker-Feldman, is it? Well, no, if it were a mere ratification, Your Honor, I agree that wouldn't satisfy Rooker-Feldman. And I think in examining the Rooker-Feldman doctrines, courts have sort of struggled with the second and the fourth factor of Rooker-Feldman in terms of the relief sought and what is actually being sought to be reviewed. But in this case, Mr. Meritz, in his complaint, his requested relief did include review and rejection in the state court judgment because in his complaint, he sought injunctive relief to prevent the seizure of his land. And this court, in an unpublished decision, Stacey v. City of Hermitage back in 2006, it examined a case where there was a state court order allowing demolition of a home and said Rooker-Feldman doesn't apply because the plaintiffs didn't challenge that actual order. They were challenging a more general challenge to the statute, but Rooker-Feldman wasn't implicated because they weren't seeking to actually directly challenge the order that allowed their home to be demolished. By contrast here, Mr. Meritz did seek injunctive relief seeking, among other things, to prevent the seizure of his particular piece of land. So that's the state court judgment that he's asking now this court to review and reject that state court judgment. So we believe that that would satisfy the fourth prong of Rooker-Feldman and would therefore deprive this court of jurisdiction to determine. Can you just clarify for us if you know whether the legal transfer of title and possession, does that take place upon the filing of the declaration of taking? Or if preliminary objections are filed, is that held in abeyance until there is some court? I believe it's the latter, Your Honor, but I'm not 100% positive. I'm not confident on that answer. I apologize, but I believe it's not until the writ is resolved by the trial court. Okay. Would you address the Burford abstention issue? Certainly, Your Honor. As for Burford abstention, contrary to what Amicus and Mr. Meritz sort of contend in their briefing, this isn't merely a challenge as to whether or not, you know, this isn't solely a compensation issue, as I stated earlier. Rather, Mr. Meritz has been challenging the ability of the Commonwealth of Pennsylvania to seize his land under the statute, as well as the eligibility of his land to be seized under state law. And that goes to his claims as far as chain a title predating the existence of the Commonwealth of Pennsylvania. And if he were merely making an argument about, as Judge Phipps, I believe, suggested, my land's been taken. I don't care about that. I just want just compensation. That'd be a completely different situation. But here, he's been claiming throughout the pendency of this litigation that because of his chain of title, the state can't seize his land at all under state law. And he's also alleged that the seizure of his property didn't qualify as a public use under the Pennsylvania Constitution. So for the court to determine those issues, they're going to, it would require the federal courts to wade into sort of the nuts and bolts of Pennsylvania's eminent domain statute and determine whether or not, you know, this land does qualify as public use for the purpose that was claimed by the Commonwealth of Pennsylvania and PennDOT, whether or not this type of land that can trace its title back to predating the colony of Pennsylvania, whether or not that would qualify as land that could be seized under the statute. And that's simply not, those are exactly the sorts of issues that that Burford abstention is designed to prevent the federal courts from having. Let me work backwards. Does Burford, even if it were to apply and bar, doesn't that permit nothing more than a court staying as opposed to dismissing the claim? Well, under normal circumstances, yes, your honor. But as your honors aware, this is now the second federal court case in relation to Mr. Maritz's attempts to bring this takings case in federal court. He removed from, he improperly removed from Commonwealth Court of Pennsylvania, the intermediate appellate court, the initial appeal from the declaration of taking and granting of the writ of possession. The Commonwealth Court affirmed that decision. He removed that to the federal district court. The federal district court abstained under Burford and dismissed the case on other grounds as well. This court affirmed that, quashed his appeal when he attempted to appeal that. While that case was pending, he filed this new lawsuit raising very similar claims to what had previously been raised in his first federal case. That again was a removal of his state court case. So there's normally an abstention and just allowing a state contemplates that there's some sort of pending state court proceeding that needs to play itself out in some sort of parallel proceeding. But in this case, he removed the state court proceeding to this court. The federal district court adjudicated that. So there's left for this court to stay, for the state court to decide at least as it relates to the eminent domain, the taking and then related issues to that. The district court says this was a damages action. That's a quote. We conclude that the district, so here, when you look to abstention, you look to Quackenbush, it applies only where the relief is equitable or otherwise discretionary. That is not damages. So I'm at a loss as to how any just compensation claim can be barred by Burford. Well, and again, your honor, and I believe it was Jed Krause who, who first sort of brought this up while while amicus was arguing. Well, first of all, we do have the Coles case, but second of all, Coles, Coles is limited to its facts, if in any event, and it doesn't mind us because it's not presidential opinion. Granted, agreed, your honor. However, it's certainly persuasive to this, to this panel here today. And as far as looking sort of doing a deeper dive into Coles, I believe amicus and Judge Krause were discussing the concept of an equitable dependent claim, and sort of the issues presented there. And again, this goes back to our sort of overarching issue with this litigation in that it's our contention that the takings and compensation issues cannot be decided by this court without making determinations as to the propriety of the state court. Here's the thing. I do not understand how determining a just compensation is an equitable dependent claim. It's just just finding out how much a person is owed for a parcel of land. It involves a valuation. That's what it involves. It involves a fair market valuation or, or some other discounted valuation, whatever you want to call it involves a valuation. I'm, I'm really struggling to see how that valuation and seeking compensation in the amount of that value can be characterized as equitable dependent. Because your honor, the value of the land, the just compensation owed for the land is going to be, in our view, dependent on whether or not sort of these ancillary issues regarding the taking that Mr. Merritt has just described. So, so, so, so, I mean, okay. So, so the only equitable dependency you have, rather than just kind of belabor this, the only equitable dependency that you have is that a condition precedent for just compensation is taken. Is that a fair way of saying your position? If I understand, if I understand your, your question, yes, your honor, in that the amount of compensation is going to be dictated, at least in part, on the whether or not the amount of land taken. I thought you were arguing that he was, he's requesting in the He is requesting that he have, he requested the land back, he requested declaratory relief, and you requested damages as well. But there were, I believe, four or five different, different claims for relief in the original complaint, your honor. So is that, is that part of your, your argument as to what, what, what equitable issues are here that come into play when we're talking about Quackenbush or Burford? No, your, your honor, our, our, the only way that we're using that is to say that to the extent that damages is being considered, what the proper amount of compensation is for the land, that that would be at least in some part dependent on the propriety of the initial taking by, by the Pennsylvania. Any further questions? We've had you up almost 22 minutes, so we'll hear from Ms. Lane-Steele on rebuttal then. Thank you very much. Thank you, your honor. Thank you, your honors. I'll be brief, just quickly to address Judge Krause's question about what Pennsylvania statute says about a transfer of title and possession. Section 302A of the eminent domain code, 302A2 states that the title which the condemnor acquires in the property condemned shall pass to the condemnor on the date of the filing, and that this is under the declaration of taking. So the filing of the declaration of taking and the condemnor shall be entitled to possession under section 307. So section 302 grants title upon the declaration of taking filing. Section 307 then governs possession. And just to be brief, there's, there are some times when a court can issue a writ of possession before the preliminary ejections have been fully adjudicated. So that's, that was just to answer your question on that issue, Judge Krause. Sort of more broadly, Pennsylvania law requires that the taking itself be adjudicated in one proceeding and then the just compensation be adjudicated in the other. And so now Mr. Maritz has done one, he's adjudicated the taking, but he hasn't filed a petition for a board of viewers to adjudicate the latter. So by the nature of Pennsylvania state law, these two things are analyzed separately. So if we do look at the just compensation, sort of the peripheral more complicated issues fall away. And we have a claim that hasn't been adjudicated in state court. We have a claim, like Judge Phipps says, that just requires, it's a fact question, what's the fair market value of his land? We do have this sovereign immunity hump, but for the reasons I've explained, I think that doesn't apply here. So this case is quite complicated, but when only focusing on the just compensation, which again is a product of Pennsylvania state statute, I think- But isn't the strongest argument against what you said that we never, ever, ever have to reach the just compensation issue if we find, if we address and find that the taking was wrong. And if that's the case, then even though the amount of just compensation is not equitable, that's just classic monetary relief, getting to that question depends on the taking, which may involve some degree of, I don't know if it's classically equitable relief, at least injunctive relief, probably sounding inequity. And so isn't that his strongest argument that, look, if there was no challenge to the taking, then the just compensation is not dependent on anything, that's just what we've got. But since there's a first primary challenge that would prevent us from ever getting to just compensation, or maybe we just get to just compensation anyway because he's lost title for X number of months or years and we're there anyway, but I don't think that's in the briefs. Right, Your Honor, but in order for this to be equitable sort of relief dependent, this court would need to go and say that the state court eminent domain proceeding was wrong, was unconstitutional. And if there never was a taking and of itself, Your Honor is right, then we would never get to the just compensation issue. I guess what I'm saying is that if you don't do that, if you don't say that the state court was wrong in holding that this taking was proper, if you don't address that, then you do sort of have just a straightforward just compensation claim. But if you, but if this court does sort of go back and say, well, that taking was improper, then he wouldn't be entitled to just compensation. Well, I suppose he might be entitled to some damages from the occupation of his land or something like that. But it wouldn't be sort of the same kind of analysis that we've briefed here in this case. Any further questions? Well, thank you to both of counsel for arguments in a very complicated law school exam type of case. And again, Ms. Lane, still thank you to you and your firm for undertaking this chore on an amicus level and much appreciated. Thank you, Your Honor, for having me. It's a great privilege.